THE TRUSTEES OF THE HILO BOARDING SCHOOL, A CORPORATION, *v.* THE TERRITORY OF HAWAII.

## No. 965.

APPEAL FROM WATER COMMISSIONER.

HON. C. F. PARSONS, COMMISSIONER.

ARGUED JANUARY 18, 1917.          DECIDED FEBRUARY 14, 1917.

ROBERTSON, C.J., QUARLES AND COKE, JJ.

WATERS AND WATERCOURSES—*appeal and error—findings of water commissioner.*

On an appeal from the decision of a water commissioner, where the determination of a question of fact depended on conflicting

testimony, the finding of the commissioner ought not to be disturbed if it is supported by substantial evidence and does not appear to be against the weight of the evidence, or inherently inequitable.

In this case the decision of the commissioner is affirmed upon the evidence.

OPINION OF THE COURT BY ROBERTSON, C.J.

This is a suit which was brought before the circuit judge of the fourth circuit, sitting as water commissioner, by The Trustees of the Hilo Boarding School, a corporation, against the Territory of Hawaii and over 30 others for the adjudication and determination of a certain disputed water right claimed by the petitioner. Only the Territory contested the case, and the matter is now before us on the Territory's appeal from the decision of the commissioner. The appellant complains of certain rulings as to the admission of evidence which we deem it unnecessary to discuss since, under the view we take of the case, the decision of the commissioner ought to be affirmed upon all the evidence which went in without objection. After argument was had on the appeal the members of this court, accompanied by counsel, viewed the *locus* and examined the several points on the ground to which argument had been directed and attention was called.

The water right in question is claimed by the petitioner as an appurtenance of the land of Punahoa, situate in Hilo, Island of Hawaii, which was awarded to the American Board of Commissioners for Foreign Missions in 1849 by Land Commission Award 387, Part 4, Sec. 1. And the petitioner claims as the owner of a portion of the land of Punahoa; as grantee of certain owners of other portions thereof; and by adverse user for over twenty years as against the owners of other portions of the land, being the non-contesting respondents in this case. The Territory concedes that a water right passed with the award of the land of Punahoa

as appurtenant thereto, but claims that the decision of the commissioner was erroneous in that in determining the right he allowed a much greater quantity of water than the proofs authorized.

The south branch of the Wailuku river, from which the water in question is taken, has its origin and flows its entire length on the government land of Piihonua. At and above the point of diversion, at an elevation above sea level of from 1040 to 1060 feet, there is a peculiar formation of lava rock constituting a chain of huge boulders extending up the bed of the stream. These boulders have been connected by a series of dams, seven in number, which were put in for the purpose and have the effect of collecting and retaining the water of the stream, or a portion of it, according to the volume of the total flow which varies from day to day, and taking it out at a point on the south bank of the stream whence it flows for some distance through what appears to be a small gulch or natural waterway and thence over and across Piihonua on to Punahoa through what is admittedly an artificial ditch which eventually passes through the premises of the petitioner, in the town of Hilo, and may finally reach the sea. This is a very general description of the situation as it appears on the ground. There were two or three branches from the ditch in the town of Hilo, and the Territory contends that originally there was a branch immediately above the third Halai hill (Puuhonu) which carried a portion of the water over to the adjoining land of Ponahawai for the use of the occupants of that land, also that from a point at the base of the second Halai hill a branch took a portion of the water to the lower part of the land of Piihonua. These claims are disputed by the petitioner and there has been no water flowing in these branches for a long time. We think the facts need not be determined. The ultimate question which the commissioner had to decide was what quantity of water passed as appurtenant to

Punahoa by the Land Commission Award of 1849. There was no direct evidence on this point. There is no reason to believe that the right as it existed or was exercised before or at the time of the issuance of the award of Punahoa was defined by any definite or maximum quantity or any specific proportion of the water flowing in the stream. So far as the evidence discloses, the original right was to divert and take from the stream as much water as could be diverted by the means used, namely, dams composed of loose rocks, turf and logs, and to take the same, less whatever, if any, belonged to Ponahawai or the lower part of Piihonua, to Punahoa. The quantity of water thus diverted necessarily varied from time to time as the flow in the stream was affected by the amount of rainfall above the place of diversion. The evidence tends to show that in a time of drouth practically all the water of the stream could be diverted into the ditch. The petitioner alleged and claimed that its right should now be defined by quantity and that the quantity was approximately ten million gallons of water each twenty-four hours. The commissioner held that the petitioner was entitled to divert from the stream five million five hundred and ninety thousand gallons a day. This, of course, fixed the maximum quantity which the petitioner would be entitled to divert in any one day since the quantity flowing in the stream might at times be less than that. The petitioner now contends that upon the evidence it was and is entitled to divert ten million gallons per day. But as it did not appeal from the decision of the commissioner this court would not be authorized to increase the amount fixed by the decision. The Territory contends that the amount fixed by the commissioner was at least one million gallons more than the evidence warranted. There was no evidence of any measurements having been made of the water flowing in the ditch or the stream until in recent years, and the evidence tending to throw light upon the quantity which flowed

in the ditch in former years was very conflicting. The origin of the ditch is obscure, and rests in hearsay and tradition. On behalf of the petitioner some witnesses testified to having been informed that the ditch, with its branches, had been constructed by one Aki, who is said to have been kono-hiki of Punahoa, in 1813. Other witnesses for the petitioner testified that according to their information the ditch was made by Rev. Joseph Goodrich of the Sandwich Islands Mission in 1824. The theory of the Territory is that the ditch was built by I, a high chief of Hilo, who is said to have lived in the seventeenth century, there being evidence that the ditch was known to kamaaĩnas as "I auwai." The construction of the ditch was a work of considerable magnitude and importance, and we incline to the belief that if it had been done at so recent a time as 1813 or 1824 the indentity of the author of the project and the purpose for which it was instituted would be known with more certainty at this time. Be the fact as it may, the evidence tends to show that long prior to 1849 the water of the ditch was used not only for the domestic purposes of the inhabitants but for power purposes also. Commodore Wilkes (U. S. Exploring Expedition, Vol. IV., pp. 208, 209) spoke of a small sugar mill owned by Governor Adams which was "worked by a small stream of water led from the Wailuku river," and which in 1840 turned out about thirty tons of sugar. Counsel for the Territory contends that that mill was situated on the land of Ponahawai, and was operated by the water from the ditch which branched around to the south of the upper Halai hill. The award of Punahoa recites that the land had been given to the Sandwich Islands Mission by the King and Kaahumanu about the year 1827, and there was testimony tending to show that Mr. Goodrich operated a sugar mill by water power on the mission premises between 1827 and 1837. And there was testimony to the effect that from 1848 to 1853 the mill of a sugar plantation on Ponahawai

conducted by some chinamen was operated by water obtained from the mission ditch. The Hilo Boarding School was established in the year 1836 and since then the water of this ditch has continually been used for domestic purposes and to some extent for irrigation on the school premises. Since 1888 it has been used also for power purposes at the school. There was conflict in the testimony as to the original number of dams in the stream above the intake of the ditch. Some of the witnesses testified that formerly there were not more than two dams, while others testified that there were as many as six or seven. In 1895 the petitioner leased the water of the ditch to the Hilo Electric Light Company for power purposes, and the testimony shows that the company caused some blasting and excavating to be done in the bed of the stream above the intake of the ditch, and repaired the dams and improved their condition and stability with the use of cement. The effect of that work must have been to increase the amount of water diverted into the ditch at times when the flow in the stream was less than normal. The testimony shows that the maximum capacity of the intake is twelve million gallons per twenty-four hours, and Mr. E. D. Baldwin, a witness for the petitioner, testified that he measured the flow at the intake on December 20, 1898, and found it to be eleven million gallons. At that time, he said, about an equal amount was passing down the stream. What proportion of the water then entering the intake actually reached the premises of the petitioner, or the point in the ditch at which the electric light company took the water for power, was not made to appear. What appears to be an inherently weak point in the ditch is at a small gulch called Kalama. At this point, at an elevation of about six hundred feet, the water of the ditch drops into the gulch, flows down it for a short distance, and is taken out by the continuation of the ditch at the opposite side with the assistance of a dam in the bed of the gulch.

At one time there was a cement dam there, but it was washed away and has been replaced by one of stones. The gulch must be subject to freshets in times of heavy rains. It is evident that whatever quantity of water may enter the intake no greater quantity can pass below Kalama gulch than the capacity of the ditch and dam at that point can carry. Mr. C. T. Bailey, a witness for the Territory, testified that on December 5, 1914, he measured the flow at that point and found that three million one hundred and ninety thousand gallons were flowing over or through the dam while two million four hundred thousand gallons were continuing down the ditch. Apparently, the commissioner, in arriving at the conclusion reached by him, took the measurement made by Mr. Bailey as an important factor. It does not appear whether or not at the time the measurement was taken there was any water flowing in the gulch as distinguished from what was brought in by the ditch. Mr. Bailey further testified that on January 10, 1915, he found one million gallons coming down Kalama gulch, and counsel for the Territory, in this connection, claims that the quantity fixed by the decision of the commissioner is at least one million gallons too much. But this court cannot say, in the absence of testimony, that one million gallons, or any water at all, was coming down Kalama gulch on December 5, 1914.

The commissioner examined and analyzed the testimony with care. We do not feel obliged to review it at length. It was entirely circumstantial so far as the ultimate question as to what quantity of water was flowing in the ditch at and before the date of the award of the land of Punahoa is concerned. The commissioner admitted, as this court must admit, that "it may be only roughly approximated, with a wide possibility of error." We hold the rule to be, in an appeal in a water controversy, that where a question of fact depends on conflicting testimony, the finding of the commissioner ought not to be disturbed if it is supported by sub-

stantial evidence and does not appear to be contrary to the weight of the evidence taken as a whole, or inherently inequitable. A careful consideration of the evidence in this case, coupled with what we have observed on the ground, affords us no tangible reason for not affirming the decision of the commissioner. The decision was supported by substantial evidence, considering the character of the evidence submitted, which doubtless was the best that could be had under the circumstances, and it cannot be said to be against the preponderance of the evidence, or unfair.

In 1899 a new lease was given to the electric light company in which it agreed to supply the boarding school with water for household purposes and power and light equivalent to ten horse power, and in about the year 1901 the company moved its plant to the north side of the Wailuku river and, since then, has been taking out water at another point of diversion below the intake of the ancient ditch. What effect that may have on the right of the petitioner to continue to take water from the stream through the old ditch, or the quantity which may be so taken, are questions which have not been raised in this case and have not been considered. Since the electric light company moved its plant it has not used the water of the ditch, and the dams and ditch have not been kept in the best of condition. The petitioner has, however, granted to other parties the right to use the water of the ditch for fluming and other purposes.

The decision of the commissioner adjudicating the right of the petitioner to take and divert from the Wailuku stream at the intake of the ditch a maximum quantity of five million five hundred and ninety thousand gallons of water each twenty-four hours for use for power, irrigation and domestic purposes as an appurtenance of its premises at Punahoa, with the right to repair and maintain the dams in the stream and also the ditch in its course over and across the land of Piihonua, is affirmed.

*A. G. Smith,* Deputy Attorney General, for appellant.

*E. W. Sutton* (*Smith,. Warren & Sutton* on the brief) for appellee.